```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| DANIELLE DAISEY,<br><br>              Plaintiff,<br><br>    v.<br><br>NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY, et al.<br><br>              Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-8091 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

Plaintiff Danielle Daisey filed this 42 U.S.C. § 1983 suit alleging that the New Jersey Division of Child Protection ("NJDCP") violated her constitutional rights in their actions to remove her children, S.W., G.W., M.G., D.G., and S.G., from her care. Numerous defendants are named in the suit for their role in the removal and ensuing custody-related hearings, including the NJDCP, various DCP supervisors, case workers, and employees, DCP-affiliated doctors and therapists, Ocean City police officers, Plaintiff's law guardian and public defender, and the New Jersey Attorney General. (Compl. [Docket Item 1] at 2.)

The Court previously granted Plaintiff's application to proceed in forma pauperis [see Docket Item 2], and now must screen the Complaint under 28 U.S.C. § 1915(e)(2). The Court finds as follows:

1. According to the Complaint, on August 16, 2011, Cape May police officers and state case workers entered Danielle Daisey's home, questioned her children, determined that they were being abused and "in imminent danger," and took S.W. and G.W. into custody. (Compl. "Procedural History," ¶¶ 1-5.) Plaintiff was assigned a public defender and a fact-finding hearing took place on November 30. (Id. ¶¶ 6, 8.) She alleges that the charges against her were dismissed that day but that NJDCP failed to return her children to her. (Id. ¶ 8.) Although the Complaint is unclear, it appears that Plaintiff had three other children, M.G., D.G., and S.G., in 2013, 2014, and 2015, which Defendants also subsequently removed from Plaintiff's custody. (Id. ¶¶ 9-11.) She complains that doctors affiliated with NJDCP required her to undergo a medical evaluation and to take therapy, parenting classes, and medication as a condition for regaining custody of her children. (Id. Count III, ¶¶ 1-3; & Count VII, ¶¶ 1-2.) She alleges that the public defender assigned to represent her failed to advise her properly. (Id. Count II, ¶¶ 1-3.) Finally, Plaintiff complains that she requested transportation assistance and housing assistance from Defendants, which Defendants improperly denied. (Id. Count V, ¶ 6 & Count VI, ¶¶ 13-14.) Plaintiff argues that these actions violated her constitutional rights, and she seeks various remedies, including damges for her pain and suffering as well as

an injunction from the Court, ordering Defendants to return her children. (Id. "Injunction Relief," ¶¶ 1-7.)

    2.   28 U.S.C. § 1915(e)(2)(B) requires the Court to review Plaintiff's Complaints and dismiss sua sponte any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Under Federal Rule of Civil Procedure 8, a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To prevent a summary dismissal, a complaint must allege sufficient factual matter, accepted as true, to show that the claim is plausible on its face. A facially plausible claim is one that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678). In determining the sufficiency of a pro se complaint, the Court must construe it liberally in favor of the plaintiff. United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The court will not credit legal conclusions or "recitals of the elements of a cause of action,

supported by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 678; <u>see</u> <u>also</u> <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 128 (2010).

    3.   Having reviewed Plaintiff's Complaint, the Court finds that it fails to state a claim over which a federal court would have subject matter jurisdiction. Although Plaintiff has clothed her complaint in the garb of a civil rights action, her Complaint boils down to a demand to regain custody of her children. Plaintiff does not allege, for example, that Defendants failed to abide by the law in the removal of her children, nor does she take issue with the legality of the law itself. Indeed, she notes several times that she "was afforded a fact finding hearing" after her children were taken from her custody, appeared to have been served with notice to appear before a court, and was assigned a public defender. (<u>See</u>, <u>e.g.</u>, Count I, ¶ 12, Count IV, ¶ 1, Count VI, ¶¶ 7, 8.) Rather, Plaintiff's primary complaint against the various Defendants is that their removal decisions were simply wrong. She repeatedly complains that the evidence of abuse was "false" and "misleading" and that Defendants removed her children "'without showing a probable cause of imminent danger' when actual harm has not been proven or a 'substantial risk of harm.'" (<u>See</u>, <u>e.g.</u>, Compl. Count I, ¶ 11 & Count VI, ¶ 7.) She also challenges the order, permitted by statute, <u>see</u> N.J.S.A. 9:6-8.58, that she

undergo medical examinations, take medication, and participate in classes.

    4. This Court does not have jurisdiction over such matters. The New Jersey Legislature "adopted comprehensive legislation for the protection and welfare of the children of this State," and child abuse and neglect cases are controlled by Title 9 of the New Jersey Statutes. New Jersey Div. of Youth and Family Serv. v. M.C. III, 990 A.2d 1097, 1107 (N.J. 2010). New Jersey law makes clear that "the Superior Court, Chancery Division, Family Part has *exclusive original jurisdiction* over noncriminal proceedings under this act alleging the abuse or neglect of a child." N.J.S.A. 9:6-8.24 (emphasis added). New Jersey law also mandates "[a]ll noncriminal cases involving child abuse" to be "transferred to [New Jersey family court] from other courts . . . ." N.J.S.A. 9:6-9.22; see also Cesare v. Cesare, 713 A.2d 390, 399 (N.J. 1998) (noting the "family courts' special jurisdiction and expertise in family matters"). Moreover, appeals from any "final order or decision in a case involving child abuse" under Title 9 are taken to New Jersey appellate courts, not to federal court. N.J.S.A. 9:6-8.70. Even when a complaint is "drafted in tort, contract, 'or even under the federal constitution,'" if the complaint involves matters of domestic relations, it is generally not within the federal court's jurisdiction. New Jersey Div. of Youth and Family Servs. v. Prown, No. 13-7776, 2014 WL 284457, at *2 (D.N.J. Jan. 24,

5

2014) (citation omitted). These statutory provisions are consistent with the well-settled general understanding that the "'whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (quoting In re Burrus, 136 U.S. 586, 593-94 (1890)). To the extent that Plaintiff seeks review of the removal determinations, this Court lacks jurisdiction to entertain her claims.

5.   Even if this Court had federal subject matter jurisdiction, the doctrine of abstention would still bar the present action, since it appears from Plaintiff's Complaint that proceedings were held in state court. All doctrines of abstention serve two common purposes: "to avoid premature constitutional adjudication in the federal courts," Hull v. Petrillo, 439 F.2d 1184, 1188 (2d Cir. 1971), and "to ensure the proper relationship between the state and the federal judiciary." Crane v. Fauver, 762 F.2d 325, 329 (3d Cir. 1985) (internal citations and quotation omitted). In this case, depending on whether a final outcome has been reached in state removal proceedings, a fact which the Complaint does not make clear, Plaintiff's claims would be barred by either the Rooker-Feldman doctrine or the Younger doctrine of abstention.

6.   Plaintiff's Complaint is not a model of clarity, but at the very least, the allegations indicate that there were

6

removal proceedings in New Jersey family court. She alleges, for example, that she was assigned to a public defender, who wrongfully advised her to plea. (See Compl. Count II.) Fact-finding hearings were held after her children were removed. (See id. Count VI.) Plaintiff also notes that she was "order[ed]" to participate in therapy and to undergo medical examinations (see id. Count VI, ¶ 12), determinations that are made by the trial court. See N.J.S.A. 9:6-8.58.

7. The dates alleged in the Complaint – 2011, 2013, 2014, and 2015 – suggest that removal proceedings have long concluded and that Plaintiff is now protesting the trial court's final orders of removal. If this is indeed the case, Plaintiff's suit is barred by Rooker-Feldman. "[U]nder what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006); see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 169 (3d Cir. 2010) (Rooker-Feldman doctrine prohibits district courts from reviewing proceedings "already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.") (quotations and citation omitted). The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Lance, 546 U.S. at 466 (citation omitted). Four requirements must be met: (1) the federal

7

plaintiff must have lost in state court; (2) the plaintiff complains of injuries caused by state-court judgments; (3) the state court judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great W. Mining, 615 F.3d at 166 (quotation omitted).

8. Assuming that state court proceedings have concluded, the Rooker-Feldman doctrine applies to bar Plaintiff's claims. Most of the injuries alleged in the Complaint stem from the removal of Plaintiff's children, and Plaintiff seeks an injunction from the court to return her children to her. This Court cannot review, negate, void, or provide relief that would invalidate decisions in the state court matter. Thus, to the extent she directly challenges the state court's findings of removal and asks this Court to overturn those judgments, her claims are barred. See Johnson v. City of New York, 347 Fed. App'x 850, 852 (3d Cir. 2009) (affirming district court's dismissal of plaintiff's claims that child services improperly removed his children for abuse and neglect, because Rooker-Feldman doctrine barred review); White v. Supreme Court of N.J., 319 Fed. App'x 171, 173 (3d Cir. 2009) (affirming district court's refusal to hear child custody case under Rooker-Feldman); New Jersey Div. of Youth and Family Servs. v. Prown, No. 13-7776, 2014 WL 284457, at *2 (D.N.J. Jan. 24, 2014)

(holding that Rooker-Feldman barred review of state proceedings concerning child custody).

9. Even if one of Plaintiff's removal cases is still pending before the New Jersey state court, Younger would bar those claims. The Younger doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Under Younger, federal court should abstain from enjoining state civil proceedings that implicate important state interests. Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 Fed. App'x 232, 236 (3d Cir. 2009). Younger abstention is warranted when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 Fed. Appx. 232 (3d Cir. 2009).

10. All three requirements are satisfied here. First, Plaintiff's ongoing state proceedings are judicial in nature, since removal proceedings are before the New Jersey Superior Court. See N.J.S.A. 9:6-8.24. Second, Plaintiff's Complaint implicates important state interests. Issues relating to child custody generally fall under the umbrella of "domestic

relations," and the Supreme Court has long noted state tribunals' "special proficiency . . . over the past century and a half in handling issues that arise" in the area. Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992); see also Marshall v. Marshall, 547 U.S. 293, 307 (2006). Particularly where the question revolves around the status of a domestic relationship, in this case, the custody status of a child, the case implicates "difficult questions of state law bearing on policy questions of substantial public import whose importance transcends the result in the case [] at bar," and is more appropriate for a state court. Ankenbrandt, 504 U.S. at 705-06; see also Mayercheck v. Judges of Pa. Sup. Ct., 395 Fed. App'x 839, 942 (3d Cir. 2010) (noting that domestic relations exception divests federal courts of jurisdiction over cases involving a decree of child custody); Matusow v. Tans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (stating same). Finally, there is no reason why Plaintiff may not raise her constitutional claims in the state proceedings. See Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 Fed. App'x 232, 239 (3d Cir. 2009). ("To satisfy the third prong of Younger, it is sufficient 'that constitutional claims may be raised in state-court judicial review of the administrative proceeding.'" (quoting Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629 (1986))).

11. Additionally, the New Jersey Division of Child Protection is immune from suit under the Eleventh Amendment. The Eleventh Amendment immunizes states from suit by private parties in federal court, and the immunity extends to state agencies and departments, or if the named Defendant is an "arm of the state." MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001). New Jersey courts have long held that the NJDCP is, "beyond dispute," an "arm of the state" for purposes of sovereign immunity. Izquierdo v. New Jersey, No. 12-7298, 2014 WL 234186, at *2 (D.N.J. Jan. 21, 2014) (Debevoise, J.); see also Sweet-Springs v. Dep't of Children and Families, No. 12-706, 2013 WL 3043644, at *5-6 (D.N.J. June 17, 2013) (finding predecessor to NJDCP protected by Eleventh Amendment sovereign immunity); Pena v. Div. of Child & Family Servs., No. 08-1168, 2010 WL 3982321, at *4 (D.N.J. Oct. 8, 2010) (predecessor to NJDCP was entitled to immunity under the Eleventh Amendment); Simmerman v. Corino, 804 F. Supp. 644, 650 (D.N.J. 1992) (finding predecessor to NJDCP entitled to sovereign immunity and noting that it is "created by statute and is answerable to other State agencies."); New Jersey Div. of Youth & Family Servs. v. D.C., 571 A.2d 1295, 1299 (1990).[1]

---

[1] To the extent Plaintiff sues the Public Defender's Office, it is also immune from suit. It is "equally well-established in this District that the Office of the Public Defender is a state agency entitled to Eleventh Amendment immunity." Izquierdo v. New Jersey, No. 12-7298, 2014 WL 234186, at *2 (D.N.J. Jan. 21, 2014); see also, Hughes v. State of New Jersey, No. 11-1442, 2012 WL 761997, at *3 (D.N.J. March 7, 2012) (citing Peterson v.

11

12. Plaintiff sues the individual case workers and police officers involved in the removal of Plaintiff's children, as well as the doctors who were involved in evaluating and prescribing her treatment. New Jersey law, however, exempts from liability police officers and "designated employee[s] of the division" who assist in the removal of a child from the home. See N.J.S.A. 9:6-8.29 ("Any person or institution acting in good faith in the removal or keeping of a child pursuant to this section shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed as a result of such removal or keeping.") Likewise, New Jersey law extends immunity to the doctors and therapists involved in protective custody proceedings. See N.J.S.A. 9:6-8.20 ("Any physician or director of a hospital or similar institution who takes a child into protective custody pursuant to this act shall have immunity from any civil and criminal liability that might otherwise be incurred or imposed.") To the extent Plaintiff challenges the order to accept medical evaluations and certain services, such orders originate from the New Jersey Family Court, which this Court has no jurisdiction to review. See N.J.S.A. 9:6-8.58 ("In cases where, in the opinion of the court, an individual found to have abused or neglected a child appears

---

Rinkus, No. 10-5316, 2011 WL 2148312 (D.N.J. May 31, 2011) ("The Office of the Public Defender is an agency established by the State of New Jersey, in the Executive Branch, to fulfill the State's obligation to provide representation to indigent criminal defendants.").)

to be in need of therapeutic services, the court may order the individual to accept such services or evaluation for such services, including, but not limited to, homemaker services, functional education, group self-help programs, and professional therapy . . . .")

13.  Finally, Plaintiff's § 1983 claims against her public defender and law guardian must also be dismissed. Section 1983 authorizes suit against any person who, "under color of law," deprives a citizen of his or her constitutional rights. See 42 U.S.C. § 1983. It is well-settled, however, that a public defender, despite being paid by the State, does not "act under color of state law" within the meaning of § 1983, and cannot subject to liability under that statute. See Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981) (holding that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel" to a criminal defendant because they serve as independent advocates and, by nature of their function and duty, are not servants to an administrative superior); Black v. Bayer, 672 F.2d 309, 317 (1982) (explaining that "exposing court-appointed counsel to liability . . . would deter many qualified, competent lawyers from accepting court appointments" and holding that "court-appointed counsel are absolutely immune from civil liability under § 1983."). And, even though Plaintiff states that her public defender "conspired" with NJDCP, a state agency, to

13

deprive her of her constitutional rights, the Complaint contains no facts whatsoever that gives rise to an inference that there was an agreement between her public defender and NJDCP officials to deprive Plaintiff of her rights. See Watkins v. Weber, 546 F. Supp. 2d 182, 187 (D.N.J. 2008) (dismissing plaintiff's § 1983 claims against public defender defendants because there were no facts that would suggest a conspiracy between the public defenders and prosecutors).

    14.  In sum, and for all of the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted. Because any amendment would be unfruitful, the dismissal is with prejudice. The accompanying Order will be entered.

 **June 27, 2016**              **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                              Chief U.S. District Judge